John Henry AUSTIN, Sr., Appellant,

v.

The STATE of Texas, Appellee.

No. 38812.

Court of Criminal Appeals of Texas.

Dec. 15, 1965.

Rehearing Denied Feb. 2, 1966.

Carnahan & Fields, Amarillo, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Judge.

The offense is murder; the punishment, five years.

The state's evidence shows that the appellant and the deceased lived in an apartment at 614 West 3rd Street in the city of Amarillo.

Maybelle Perry, called as a witness by the state, testified that on the night in question she went to appellant's apartment around 7 p. m. and after he had gone after some whisky the two started drinking. While they were drinking, someone knocked at the door and called "John L.," which was the name of appellant's son. When the person knocked, appellant went to the door, turned the light off, and told the witness to keep quiet and "say nothing, *because there was the s.o.b. he was going to kill.*" The knocking stopped and when it next started it sounded like it was at the back. Appellant told the witness "to hush, that he hadn't gone, that he was still out there." When the person knocked the third time, at the front, appellant, with a gun in his hand, came to the bed where the witness was sitting and then peeped out the window. The witness testified that she then went into the bathroom and got into the bathtub because she was scared. While in the bathtub she heard a shot and the breaking of glass. After the shot was fired appellant called to her to " 'come on out of there and clean up in here,' " and then told her to go tell his (appellant's) wife, who lived in a house nearby, that "he got that *nigger.*"

Allie Tenner, called as a witness by the state, testified that, on the night of the shooting, appellant came to her house next door about midnight and told her he had shot a man and asked her to call the police. When the witness dialed the number, appellant talked and in the conversation stated that he had shot a man. The witness further testified that when she looked out

she saw a man lying face down on his all fours, near appellant's apartment.

It was shown that the person lying on the ground was Raymond O. Johnson, the deceased, who had been shot once in the left side of the neck. It was further shown that the cause of death was hemorrhage from the bullet wound and that a bullet was recovered from the body which appeared to be a .22 calibre.

A bullet hole was found through a window frame in appellant's apartment and also what appeared to be powder burns on a curtain.

Testifying as a witness in his own behalf, appellant stated that the deceased lived with him in the apartment; that on the night of the shooting, the witness Maybelle Perry came to his apartment and was intoxicated; that after she left he went to bed and later heard something hit the wall; that he got up and "all at once the glass popped in the house" and went "all over the floor"; that he got up, grabbed his .22 rifle and "didn't take *no* aim or nothing, just shot it over toward the window sill * * * just pulled it up and shot." Appellant also stated that some seven or eight months before, his apartment had been broken into and burglarized.

Geneva Culberson, called as a witness by the state, in rebuttal, testified that, prior to the shooting, appellant had told her the deceased had a government check coming and that he was going to try to get it before someone else took it away from him after he had started drinking.

Allie Tenner, recalled as a witness by the state, in rebuttal, testified that appellant in a conversation with her had explained how to kill someone and get away with it. The witness related that appellant stated: "anyone coming in the house, don't do it, 'if you want to do it, get them outside, shoot them, kill them. Just get outside and break the glass in and make it appear they are going to break in on you * * *' do that and there wo*nt* be *nothing* done to you.'"

Appellant again took the witness stand and denied having said that he was going to get the deceased's government check and telling Allie Tenner how to kill a person and get away with it.

The evidence is sufficient to sustain the conviction.

The record presents no formal bills of exception and there are no informal bills of exception in the statement of facts.

There appear in the transcript certain purported objections to the court's charge which were filed in the cause approximately one month after the case was tried.

The objections do not appear to have been made *in writing* before the court's charge was read to the jury, as required by Arts. 658 and 659, Vernon's Ann. C.C.P., and present nothing for review. Robbins v. State, 161 Tex.Cr.R. 96, 274 S.W.2d 691; Howell v. State, 171 Tex.Cr. R. 545, 352 S.W.2d 110.

The judgment is affirmed.